### In re SCHULZ et al.

(District Court, D. Oregon. February 21, 1905.)

### No. 791.

BANKRUPTCY—HOMESTEAD—ABANDONMENT.

    A bankrupt, having a homestead and a large family in Washington, removed, with certain of his children, to Oregon to obtain work. He was a tinner, and desired to start a shop where his homestead was located, his purpose being to earn sufficient money in Oregon to do so. He had accumulated some money and a part of the necessary tools, and had paid the interest on the purchase-money mortgage on the homestead, when, being unable to keep up two separate establishments, his wife, who had remained on the homestead, joined him in Oregon. His bankruptcy petition, however, merely alleged that he had "resided and was employed" in Oregon for six months preceding a filing of the petition, but did not allege that he had a domicile in such state. *Held*, that such facts did not show an abandonment of the bankrupt's homestead in Washington.

T. J. Geisler, for petitioners.
Bronaugh & Bronaugh, for trustee.

BELLINGER, District Judge. The question to be decided is one of homestead exemption under the bankruptcy act. Daniel Schulz, now deceased, and his son Adolph Schulz, were adjudged bankrupts in this court upon their petition filed on January 20, 1904. The two Schulzes were domiciled at North Yakima, in the state of Washington, where Daniel had a homestead, upon which he resided with his wife and a large family of children, 13 in number, 8 of whom were dependent upon him for support. On September 11, 1903, they came to Portland, leaving the wife of Daniel on the homestead at North Yakima, where she was to remain. Thereafter, on November 21, 1903, finding the burden of keeping two separate establishments greater than they could afford, the wife, on her own motion, rented the homestead for a period ending on June 15th next ensuing for $10 a month, and

joined her husband in Portland. In their petition in bankruptcy it is alleged that Adolph "has resided and been domiciled within the district of Oregon for the greater portion of six months immediately preceding," and "that Daniel Schulz has resided and been employed in the city of Portland and district of Oregon about the same time." The uncontradicted testimony of Daniel Schulz and his wife is to the effect that the former had no work in North Yakima, and had to leave the premises in order to obtain work to support his wife and children; that he was a tinner by trade; that he wanted to start a little shop in North Yakima, and came to Portland to earn enough to do this, and that at the time his testimony was taken, May 20th, he had accumulated a little money and acquired a part of the necessary tools, and had paid the interest on a purchase-money mortgage on the homestead; that at the time of leaving his home in North Yakima he intended to return "as soon as he had earned a little something," and his expectation when testifying was that he would do so at the expiration of the lease of the homestead; that immediately prior to leaving North Yakima he planted some trees and crops on the homestead, built a chicken house and a barn. The barn cost $200, and was completed a day or two before Daniel Schulz left Yakima.

I am of the opinion that the removal of Daniel Schulz to Portland, under the circumstances testified to, does not constitute an abandonment of the homestead, without reference to the law of the state of Washington providing that a homestead can be abandoned only by a declaration of abandonment, or a grant thereof executed and acknowledged, etc. "A homestead is not abandoned by the removal of the husband with his family and living elsewhere, when there is an intention to return later and make it their home." Porter v. Chapman, 65 Cal. 365, 4 Pac. 237. Such an intention appears from the testimony in this case. The removal to Portland is consistent with such an intention. It was a means to the end of establishing a business in the place of his homestead that would enable him to maintain himself and family permanently there.

All that is offered to support the contention of the creditors is the averment of residence in the petition in bankruptcy, and the testimony of an officer who served some papers in a civil suit upon the bankrupt, and who was told by him and his wife that they lived in Portland and that Portland was their home. This witness says that when he asked Daniel Schulz if he intended to make this place his home the latter answered that he did. The witness had been requested by the attorney to make this particular inquiry. Statements having the effect of admissions are to be received with caution, and this is especially true in a case like this, where it was the office of the witness to procure the particular admission. Furthermore, Schulz spoke English imperfectly, so much so that he testified through an interpreter, and he may have misunderstood the question asked him, or the witness may have misunderstood the answer. Schulz denied that any such conversation took place as the officer testifies to. In the petition to be adjudged bankrupts it is noticeable that as to Adolph, the son, it is stated that Portland has been his place of residence and domicile for the greater part of six months, while the statement as to the father is that he has

resided and been employed in the city of Portland about the same time. Whoever prepared the petition clearly intended to distinguish as to the residence of the two. The term "residence" is used as to the one in the sense of domicile, while as to the other it not only is not so used, but has reference to the fact of an employment merely. A man may have more than one residence, but he can have but one domicile. There is testimony to the effect that Daniel Schulz, upon the advice of his attorney that he had a right to trade his Yakima homestead for one in Oregon, made inquiries to that end, but did not find any opportunity to do so. But this cannot be construed as an abandonment of the homestead. An offer to sell a homestead might tend to prove an intention not to return to it, depending upon the circumstances under which the offer was made; but the only inference to be drawn from an attempt to trade one homestead for another is that of an intention not to abandon the homestead. It tends to show that there was no intention to acquire a domicile in Oregon, unless such a domicile could be substituted for that held in the state of Washington.

The petition of the widow of Daniel Schulz is allowed, and the finding and decision of the referee in respect to the homestead exemption in question is reversed.